**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RYAN O'DELL, :
:
      Plaintiff, : Case No. 1:23-cv-9052
:
v. :
: **COMPLAINT FOR VIOLATIONS OF**
INTERCEPT PHARMACEUTICALS, : **SECTIONS 14(e), 14(d) AND 20(a) OF**
JEROME DURSO, PAOLO FUNDARO, : **THE SECURITIES EXCHANGE ACT**
MARK PRUZANSKI, SRINIVAS : **OF 1934**
AKKARAJU, LUCA BENATTI, DANIEL :
BRADBURY, KEITH GOTTESDIENER, : **JURY TRIAL DEMANDED**
NANCY MILLER-RICH, DAGMAR ROSA- :
BJORKESON, GINO SANTINI, and GLENN :
SBLENDORIO, :
:
      Defendants. :

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Intercept Pharmaceuticals, Inc. ("Intercept or the "Company") and the members of Intercept board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Intercept by affiliates of Alfasigma S.p.A. ("Alfasigma").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the

"Solicitation Statement") to be filed on October 11, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Interstellar Acquisition Inc., a wholly owned subsidiary of Alfasigma ("Merger Sub") will commence a tender offer to purchase all of the outstanding shares of Company common stock (the "Tender Offer") and following the Tender Offer, Merger Sub will be merged with and into the Company, with the Company continuing as the surviving corporation and as a wholly owned subsidiary of Alfasigma (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated September 26, 2023 (the "Merger Agreement"), each Intercept common share issued and outstanding will be converted into the right to receive $19.00 per share owned (the "Merger Consideration"). In accordance with the Merger Agreement, Purchaser commenced a tender offer to acquire all of Intercept's outstanding common stock and will expire on November 7, 2023.

3.      Defendants have now asked Intercept's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.  Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Intercept's financial projections relied upon by the Company's financial advisors, Barclays Capital Inc. ("Barclays") and Centerview Partners LLC ("Centerview" and together with Barclays, the "Financial Advisors"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Financial Advisors. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Intercept

stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the Tender Offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Intercept's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Intercept common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Jerome Durso has served as a member of the Board since January 2021 and is the President and Chief Executive Officer of the Company.

11. Individual Defendant Paolo Fundaro has served as a member of the Board since 2005 and is the Chairman of the Board.

12. Individual Defendant Mark Pruzanski has served as a member of the Board since 2002.

13. Individual Defendant Srinivas Akkaraju has served as a member of the Board since October 2012.

14. Individual Defendant Luca Benatti has served as a member of the Board since April July 2014.

15. Individual Defendant Daniel Bradbury has served as a member of the Board since July 2016.

16. Individual Defendant Keith Gottesdiener has served as a member of the Board since July 2016.

17. Individual Defendant Nancy Miller-Rich has served as a member of the Board since April 2018.

18. Individual Defendant Dagmar Rosa-Bjorkeson has served as a member of the Board since April 2021.

19. Individual Defendant Gino Santini has served as a member of the Board since February 2018.

20. Individual Defendant Glenn Sblendorio has served as a member of the Board since February 2014.

21. Defendant Intercept is a company organized under the laws of Delaware and maintains its principal offices at 305 Madison Avenue, Morristown, NJ 07960. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "ICPT."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

24. Intercept, a biopharmaceutical company, focuses on the development and commercialization of therapeutics to treat progressive non-viral liver diseases in the United States, Europe, and Canada. The Company markets Ocaliva, a farnesoid X receptor agonist used for the treatment of primary biliary cholangitis in combination with ursodeoxycholic acid in adults. It is also developing Ocaliva for various indications, including nonalcoholic steatohepatitis and NASH; and other product candidates in various stages of clinical and preclinical development. The Company has a license agreement with Aralez Pharmaceuticals Canada Inc. to develop and commercialize bezafibrate in the United States. It markets its products through an internal commercial organization and third-party distributors. The Company was incorporated in 2002 and is headquartered in Morristown, New Jersey.

25. On September 26, 2023, the Company and Alfasigma jointly announced the Proposed Transaction:

> BOLOGNA, Italy and MORRISTOWN, N.J., Sept. 26, 2023 (GLOBE NEWSWIRE) -- Alfasigma S.p.A ("Alfasigma"), one of Italy's leading pharmaceutical companies, and Intercept Pharmaceuticals, Inc. (Nasdaq: ICPT, "Intercept"), a leading biopharmaceutical company in rare and serious liver diseases,

5

today announced that they have entered into a definitive merger agreement under which Alfasigma has agreed to acquire Intercept for $19.00 per share in cash. The anticipated transaction will materially expand Alfasigma's gastrointestinal and hepatology portfolio and its presence in the U.S. market.

Intercept's lead medicine is Ocaliva® (obeticholic acid), a farnesoid X receptor agonist approved in the United States and several other jurisdictions for the treatment of primary biliary cholangitis ("PBC") in combination with ursodeoxycholic acid ("UDCA") in adults with an inadequate response to UDCA, or as monotherapy in adults unable to tolerate UDCA. Ocaliva® is the only approved second-line therapy for PBC and has experienced double-digit year-over-year growth supported by an experienced specialty sales force and strong prescriber base. Intercept also benefits from a broader clinical development pipeline anchored by a novel fixed-dose combination of obeticholic acid and bezafibrate in phase 2 trials for PBC.

**Mr. Stefano Golinelli, Chairman of Alfasigma Board, declared:** *"Today's proposed acquisition is aligned with our strategy to build presence in the U.S. market, with a focus in our core gastroenterological area while adding another important asset to our innovation pipeline. This acquisition will contribute to the ambitious growth strategy designed for our company."*

**Mr. Francesco Balestrieri, Chief Executive Officer of Alfasigma, said:** *"The acquisition of Intercept marks another important milestone in Alfasigma's growth path, particularly with regard to the U.S. market in which we have significant development objectives. Intercept represents a compelling fit with Alfasigma's core business areas of gastroenterology and hepatology, and we believe that the transaction represents a transformational opportunity for both companies. We are excited to welcome Intercept employees and look forward to working together as we invest in the company to realize the full potential, to the benefit of patients."*

**Mr. Jerry Durso, President and Chief Executive Officer of Intercept, commented:** *"We are pleased to announce this transaction with Alfasigma, which delivers significant value to shareholders. Importantly, it recognizes the value of our portfolio, R&D and commercial capabilities and our talented people across the organization. The team at Intercept is proud of the breakthrough, innovative work that we have done as a pioneer, delivering life-saving medicine to patients with rare and serious liver diseases such as PBC."*

**Transaction Terms**

Under the terms of the merger agreement, Alfasigma has agreed to commence a cash tender offer to acquire all issued and outstanding shares of Intercept common stock for US$19.00 per share in cash. The purchase price represents a premium of 82% to Intercept's closing stock price on September 25, 2023.

The transaction will be fully financed by Alfasigma's existing cash on hand and existing corporate credit facilities. The members of the Board of Directors of Intercept participating in the decision have unanimously approved the transaction.

The closing of the tender offer will be subject to customary conditions, including the tender of shares which represent at least a majority of the total number of Intercept's outstanding shares of common stock and the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. Upon successful completion of the tender offer, Alfasigma would acquire all shares not acquired in the tender offer through a second-step merger for the same consideration that the tendering stockholders will receive in the tender offer.

It is anticipated the transaction will close by the end of 2023. Upon completion of the transaction, Intercept's common stock will no longer be publicly listed.

**Advisors**

Barclays and Centerview Partners are serving as financial advisors to Intercept. Skadden, Arps, Slate, Meagher & Flom LLP are serving as legal counsel to Intercept. PJT Partners is acting as exclusive financial advisor to Alfasigma and Sullivan & Cromwell LLP and Chiomenti Studio Legale as legal counsel to Alfasigma.

\* \* \*

26. It is therefore imperative that Intercept's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     The Materially Incomplete and Misleading Solicitation Statement**

27. On October 11, 2023, Intercept filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the

Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

28.    The Solicitation Statement fails to provide material information concerning financial projections by Intercept management and relied upon by the Financial Advisors in their analysis. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Intercept management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29.    For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA,

NOPAT, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

32. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide the line items used to calculate the projected Adjusted EBITDA,

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

9

NOPAT, and Unlevered Free Cash Flow, and reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Barclays' Financial Analyses*

33. With respect to Barclays' *Selected Comparable Company Analysis*, the Solicitation Statement fails to disclose: (i) the financial metrics for each company selected by Barclays for the analysis; and (ii) the inputs and assumptions underlying the representative ranges of financial multiples of 1.25x to 2.00x selected by Barclays for the analysis.

34. With respect to Barclays' *Selected Precedent Transaction Analysis*, the Solicitation Statement fails to disclose: (i) the financial metrics for each transaction selected by Barclays for the analysis; and (ii) the inputs and assumptions underlying the representative multiple range of multiples of 1.75x to 2.75x selected by Barclays for the analysis.

35. With respect to Barclays' *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the terminal value of the Company; (ii) the inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5%; (iii) the inputs and assumptions underlying the perpetuity decline rate of 40% year over year; and (iv) the number of fully diluted shares of Intercept common stock outstanding as of September 25, 2023.

36. With respect to Barclays' *Equity Research Target Prices analysis*, the Solicitation Statement fails to disclose: (i) the 16 equity research analysts observed; and (ii) the price targets published by the analysts.

37. With respect to Barclays' *Transaction Premium Analysis*, the Solicitation Statement fails to disclose: (i) the transactions selected by Barclays for the analysis; and (ii) the premiums of each transaction.

*Omissions and/or Material Misrepresentations Concerning Centerview's Financial Analyses*

38. With respect to Centerview's *Selected Public Company Analysis*, the Solicitation Statement fails to disclose: (i) the financial metrics for each company selected by Centerview for the analysis; and (ii) the inputs and assumptions underlying the representative ranges of financial multiples of 1.25x to 2.00x selected by Centerview for the analysis.

39. With respect to Centerview's *Selected Precedent Transaction Analysis*, the Solicitation Statement fails to disclose: (i) the financial metrics for each transaction selected by Centerview for the analysis; and (ii) the inputs and assumptions underlying the representative multiple range of multiples of 1.75x to 2.75x selected by Centerview for the analysis.

40. With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the implied terminal value of the Company; (ii) the inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5%; (iii) the inputs and assumptions underlying the perpetuity decline rate of 40% year over year; and (iv) the number of fully diluted shares of Intercept common stock outstanding as of September 25, 2023.

41. With respect to Centerview's *Analyst Price Target Analysis*, the Solicitation Statement fails to disclose: (i) the equity research analysts observed; and (ii) the price targets published by the analysts.

42. With respect to Centerview's *Transaction Premium Analysis*, the Solicitation Statement fails to disclose: (i) the transactions selected by Barclays for the analysis; and (ii) the premiums of each transaction.

43. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer,

Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . ." 15 U.S.C. § 78n(e).

46. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

12

48. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

49. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

50. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

51. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Violations of Section 14(d)(4) of the Exchange Act and**
**Rule 14d-9 Promulgated Thereunder**
**(Against All Defendants)**

52. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

13

53. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

54. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

55. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

56. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

57. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

58. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59. The Individual Defendants acted as controlling persons of Intercept within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Intercept, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Intercept, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Intercept, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

62. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

65. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

16

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: October 13, 2023                **MELWANI & CHAN LLP**

/s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Floor
New York, New York 10036
Tel: (212) 382-4620
Email:  gloria@melwanichan.com

*Attorneys for Plaintiff*